# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| Robin Lynn Busby, | : | |
| | : | NO. 20-10520-amc |

# **ORDER**

AND NOW, this ____ day of _____ 202__, upon consideration of the Debtor(s) Objection to the Proof of Claim of Ally Financial, any response thereto, and a hearing on the matter, it is hereby ORDERED AND DECREED that the Debtor's Objection to the Proof of Claim of Ally Financial, is SUSTAINED.

_____

J

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| Robin Lynn Busby, | : | |
| | : | NO. 20-10520-amc |

## OBJECTION TO PROOF OF CLAIM

AND NOW, this 20th day of November, 2020, Debtor hereby objects to the Proof of Claim filed on behalf of Ally Financial at Claim #2.

1. The Debtor objects to the ENTIRE PROOF OF CLAIM, as it is untimely when filed on 2/21/20. See 42 Pa CSA 5525(a) 4 year limitation

2. The Debtor objects to the Proof of Claim as it indicates the debt was in default as of 1/15/2016.

3. The Debtor objects to the Proof of Claim to the extent that debtor has no obligation on this debt. Supporting Documents do not indicate Debtors name or signature.

4. To the extent the claim seeks a deficiency – the Creditor failed to comply with state law to seek a deficiency. See 12 PA CSA 6261.

WHEREFORE, Debtor(s) ask(s) this Honorable Court to deny the claims of Ally Financial.

/S/ Paul A.R. Stewart, Esquire
Legal Helm, LLC
Paul A.R. Stewart, Esquire
Attorney for Debtor
333 East Lancaster Avenue
Suite 140
Wynnewood, Pennsylvania 19096
(610) 864-5600
**pstewart@helmlegalservices.com**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| Robin Lynn Busby, | : | |
| | : | NO. 20-10520-amc |

**DEBTOR'S REQUEST FOR PRODUCTIONS OF DOCUMENTS**

Debtor through counsel request production of the following documents:

1. Copy of all relevant lease documents
2. A complete itemized accounting of all fees assessed on account.
3. A complete payment history, repossession history and post sale documentation.
4. All written notices to debtor indicating repossession or sale of asset.

/S/ Paul A.R. Stewart, Esquire
Legal Helm, LLC
Paul A.R. Stewart, Esquire
Attorney for Debtor
333 East Lancaster Avenue
Suite 140
Wynnewood, Pennsylvania 19096
(610) 864-5600
**pstewart@helmlegalservices.com**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| Robin Lynn Busby, | : | |
| | : | NO. 20-10520-amc |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing <u>Objection to Proof of Claim</u> was served on November 20, 2020 by means of the Court's CM/ECF system or via first class mail, postage prepaid, upon the following:

**Heather Lockman, Bankruptcy Coordinator**
Ally Servicing, LLC
4000 Lexington Avenue, N.
Suite 100
Shoreview, MN 55126

**United States Trustee**
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

**William C. Miller, Esquire (Trustee)**
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106
and
1234 MARKET STREET, SUITE 1813
PHILADELPHIA, PA 19107

/S/ Paul A.R. Stewart, Esquire
Legal Helm, LLC
Paul A.R. Stewart, Esquire
Attorney for Debtor

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Robin Busby |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court | Eastern District of Pennsylvania |
| Case number: | 20–10520 |

FILED
U.S. Bankruptcy Court
Eastern District of Pennsylvania
2/21/2020
Timothy B. McGrath, Clerk

## Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Ally Financial
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**
Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?
Ally Financial
Name
PO Box 130424
Roseville, MN 55113–0004

Contact phone  800–495–1578
Contact email  n/a

Where should payments to the creditor be sent? (if different)
PAYMENT PROCESSING CENTER
Name
P.O. Box 78369

Phoenix, AZ 85062–8369

Contact phone  800–495–1578
Contact email  n/a

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                                    Proof of Claim                                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | 2072 |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 6848.60 | **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Lease – End Balance (See Attached)

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.
   **Nature of property:**
   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:** $ _____

   **Amount of the claim that is secured:** $ _____

   **Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $ _____

   **Annual Interest Rate** (when case was filed) ____ %
   ☐ Fixed
   ☐ Variable

10. **Is this claim based on a lease?**

☐ No
☑ Yes. **Amount necessary to cure any default as of the date of the petition.**   $ 6848.60

11. **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

Official Form 410                                     Proof of Claim                                     page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  2/21/2020
MM / DD / YYYY

/s/ /s/ Heather Lockman
Signature

Print the name of the person who is completing and signing this claim:

Name: /s/ Heather Lockman
First name   Middle name   Last name

Title: Bankruptcy Coordinator

Company: Ally Servicing LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 4000 Lexington Ave. N. Suite 100
Number   Street
Shoreview, MN 55126
City   State   ZIP Code

Contact phone: 800–495–1578   Email: n/a

Official Form 410   Proof of Claim   page 3

**Fill in this information to identify the case:**

Debtor 1    Robin Lynn Busby

Debtor 2    _____
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Pennsylvania (State)

Case number 20-10520

Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled on privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Ally Financial
Name of the creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Ally Financial
Name

PO Box 130424
Number   Street

Roseville     MN     55113-0004
City     State     Zip Code

Contact phone    800-495-1578

Contact email    N/A

Where should payments to the creditor be sent? (if different)

Payment Processing Center
Name

P.O. Box 78369
Number   Street

Phoenix     AZ     85062-8369
City     State     Zip Code

Contact phone    800-495-1578

Contact email    N/A

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410          **Proof of Claim**          Page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**
- ☐ No
- ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>2072</u>

**7. How much is the claim?** <u>$6,848.60</u> *

\* Claimant reserves right to amend its claim, including but not limited to, the right to amend for an unsecured deficiency.

**Does this amount include interest or other charges?**
- ☐ No
- ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

<u>Lease - End Balance (See Attached)</u>

**9. Is all or part of the claim secured?**
- ☑ No
- ☐ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   - ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
   - ☐ Motor Vehicle
   - ☐ Other. Describe: _____

   **Basis for perfection:** _____

   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of the property:** $_____

   **Amount of the claim that is secured:** $_____

   **Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:** $_____

   **Annual Interest Rate** (when case was filed) _____%
   - ☐ Fixed
   - ☐ Variable

**10. Is the claim based on a lease?**
- ☐ No
- ☑ Yes. Amount necessary to cure any default as of the date of the petition. <u>$6,848.60</u>

**11. Is the claim subject to a right of setoff?**
- ☑ No
- ☐ Yes. Identify the property: _____

Official Form 410      **Proof of Claim**      Page 2

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:*<br><br>☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Up to $3,025.00* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).<br><br>☐ Wages, salaries, or commissions (up to $13,650.00*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).<br><br>☐ Taxes or penalities owed to governmental units. 11 U.S.C. § 507(a)(8).<br><br>☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).<br><br>☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.<br><br>\* Amounts are subject to adjustment on 4/01/2022 and every 3 years after that for cases begun on or after the date of adjustment. | **Amount entitled to priority**<br><br>$_____<br><br>$_____<br><br>$_____<br><br>$_____<br><br>$_____<br><br>$_____ |

### Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500.000, imprisoned for up to 5 years or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/21/2020
                   MM / DD / YYYY

/s/ Heather Lockman
Signature

**Print the name of the person who is completing and signing this claim:**

Name      Heather Lockman
          First name       Middle name       Last name

Title     Bankruptcy Coordinator

Company   Ally Servicing LLC
          Identify the corporate servicer as the company if the authorized agent is a servicer.

Address   4000 Lexington Ave. N. Suite 100
          Number        Street

          Shoreview                                    MN         55126
          City                                         State      Zip Code

Contact phone   800-495-1578                Email    N/A

Official Form 410                    **Proof of Claim**                    Page 3

**CERTIFICATE OF SERVICE**

I, the undersigned, declare as follows:

I am over the age of 18 years and not party to this action.  My business address is PO Box 130424, Roseville, MN 55113.

I am readily familiar with the business practices of my employer for the collection and processing of documents and correspondence for mailing with the United States Postal Service and those correspondence and documents are deposited with the United States Postal Service that same day, or within one business day, in the ordinary course of business.

On February 21, 2020, I served the following document:

- Proof of Claim with all Exhibits and Attachments

in the method or methods described below and if served via U.S. Mail, by placing copies of said documents in sealed envelopes and addressed as follows:

| **Non-Filing Co-Debtor** | **Debtor** | **Attorney** |
|---|---|---|
| ROBERT BUSBY | Robin Lynn Busby | PAUL A.R. STEWART |
| 1100 HILLCREST RD | 1100 HILLCREST RD | *Served Electronically* |
| PENN VALLEY, PA 19072-1224 | PENN VALLEY, PA 19072 | |

**Trustee**
WILLIAM C MILLER
*Served Electronically*

I then placed said envelopes for collection and mailing at my employer's office following ordinary business practices, addressed to the parties so designated above.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 21, 2020, at Shoreview, Minnesota.

Signed:    /s/  Heather Lockman
Bankruptcy Coordinator
Ally Servicing LLC
PO Box 130424
Roseville, MN  55113
800-495-1578
Fax:  651-367-2005

Official Form 410     **Proof of Claim**     Page 4

Case 20-10520-amc    Claim 5-2 Part 2  Filed 11/20/20 Filed 11/20/20  Desc Attachment 4  Desc 5 of 5
Document      Page 12 of 14
United States Bankruptcy Court
for the Eastern District of Pennsylvania

In Re:  Robin Lynn Busby
Case No.:  20-10520 – Chapter:  13

**Statement of Account regarding Vehicle**

| | | |
|---|---|---|
| Creditor acct. no.: | XXXXXXXX2072 | |
| Disposal date: | 02/15/2017 | |
| Charge off date: | 03/07/2017 | |
| Date opened: | 12/17/2013 | |
| Past due payments: | = | $5,653.03 |
| Unpaid charges and fees (taxes, parking tickets, insurance, repossession, storage, etc.) | + | $1,195.57 |
| Balance due: | = | $6,848.60 |

* Other Funds Received can include additional security deposit paid during the lease, payments already made for excess mileage or wear, or refunds received from cancelled optional insurance or maintenance agreements.

This is an agreement to lease a vehicle. This is not a purchase agreement. You are not buying the vehicle. By signing this lease, you agree to everything on the front and back.
"We", "us", and "our" refer to Lessor named above and any assignee. An "assignee" is a person to whom this lease is assigned (if it is assigned).
☑ If this box is checked, Lessor will assign this lease to and sell the vehicle to Ally Financial Inc. ("Ally").
☐ If this box is checked, Lessor intends to retain this lease and not assign it.
**Monthly Payment Lease.** If your payment schedule shows monthly payments, this is a monthly payment lease (see Section 2(a)). This lease is a monthly payment lease.
**Single Payment Lease.** If your payment schedule shows a single scheduled payment (Section 2(b)), then your lease is a single payment lease.

## The Vehicle You Are Leasing

| New/Used | Year | Make & Model | Body Style | Vehicle ID # | Mileage | Primary Use: Personal, unless otherwise indicated below ☐ Commercial, Business, or Agricultural |
|---|---|---|---|---|---|---|
| NEW | 2014 | GMC ACADIA | | 1GKKVTKD1EJ110184 | 333 | |

Dealer Installed Options _____ GVW (if truck) _____ ☐ Public Conveyance

### Federal Consumer Leasing Act Disclosures

**1. Amount Due at Lease Signing or Delivery** (Itemized Below)*
$ 6725.00

**2(a). Monthly Scheduled Payments**
Your first monthly payment of $ 528.22 is due on 17 DEC 2013, followed by 38 payments of $ 528.22 due on the 17TH of each month. The total of your monthly payments is $ 20600.58

**2(b). Single Scheduled Payment**
Your single payment of $ N/A is due on N/A. This is the total of your scheduled payments.

**3. Other Charges** (not part of your scheduled payment)
Disposition fee (if you do not purchase the vehicle and we do not waive the fee under Section 13) $ N/A
N/A $ N/A
Total $ N/A

**4. Total of Payments** (The amount you will have paid by the end of the lease.)
$ 26707.36 [unclear]

### * Itemization of Amount Due at Lease Signing or Delivery

**5. Amount Due at Lease Signing or Delivery:**
a. Capitalized cost reduction $ 5652.87
b. First monthly payment $ 528.22
c. Single scheduled payment $ N/A
d. Refundable security deposit $ N/A
e. Title fees $ 22.50
f. Registration fees $ 76.90
g. Sales/use tax $ 313.51
h. DOCS 131 $ 131.00
i. N/A $ N/A
j. N/A $ N/A
k. Total $ 6725.00

**6. How the Amount Due at Lease Signing or Delivery will be paid:**
a. Net trade-in allowance $ N/A
b. Rebates and noncash credits $ 2225.00
c. Amount to be paid in cash $ 4500.00
d. Total $ 6725.00

### 7. Your scheduled payment is determined as shown below:

a. **Gross capitalized cost.** The agreed upon value of the vehicle ($ 50850.00) and any items you pay for over the lease term (such as service contracts, insurance, and any outstanding prior credit or lease balance) . . . $ 51445.00
b. **Capitalized cost reduction.** The amount of any net trade-in allowance, rebate, noncash credit, or cash you pay that reduces the gross capitalized cost . . . −$ 5652.87
c. **Adjusted capitalized cost.** The amount used in calculating your base scheduled payment = $ 45792.13
d. **Residual value.** The value of the vehicle at the end of the lease used in calculating your base scheduled payment −$ 30083.20
e. **Depreciation and any amortized amounts.** The amount charged for the vehicle's decline in value through normal use and for other items paid over the lease term = $ 15708.93
f. **Rent charge.** The amount charged in addition to the depreciation and any amortized amounts +$ 3190.86
g. **Total of base scheduled payment(s).** The depreciation and any amortized amounts plus the rent charge = $ 18899.79
h. **Lease payments.** The number of payments in your lease ÷ 39
i. **Base scheduled payment** = $ 484.61
j. **Sales/use tax (estimated)** +$ 43.61
k. N/A +$ N/A
l. **Total scheduled payment** = $ 528.22

**Early Termination.** You may have to pay a substantial charge if you end this lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the lease is terminated. The earlier you end the lease, the greater this charge is likely to be.

**8. Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of 15,000 miles per year at the rate of $ .25 per mile.

**9. Purchase Option at End of Lease Term.** You have an option to buy the vehicle at the end of the lease term for $ 32583.20 plus official fees and taxes

**10. Other Important Terms.** See your lease documents for additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, and insurance.

### 11. Itemization of Gross Capitalized Cost.
a. Agreed upon value of the vehicle $ 50850.00
b. Ally administrative fee +$ 595.00
c. License/registration/title fees +$ N/A
d. Sales tax +$ N/A
e. Other tax (describe) N/A +$ N/A
f. Optional service contract +$ N/A
g. Optional maintenance contract +$ N/A
h. Optional life insurance +$ N/A
i. Optional disability insurance +$ N/A
j. N/A +$ N/A
k. N/A +$ N/A
l. Gross Capitalized Cost = $ 51445.00

**12. Official Fees and Taxes.** You will pay all government license, title, registration, testing, and inspection fees for the vehicle. You will pay all taxes on the lease, payments due under the lease, or the vehicle that the government levies on you, the vehicle, or us (except our net income taxes). We may change your monthly payment if taxes change. We may bill you separately for official fees and taxes.
Estimated Total Official Fees and Taxes You Must Pay During Lease. $ 2258.65
The actual total of official fees and taxes may be higher or lower depending on tax rates in effect or the vehicle value when a fee or tax is assessed.

**13. Disposition Fee Waiver.** We will waive any Disposition Fee shown in Section 3 if, at the time this lease ends, you enter into a motor vehicle lease or installment sale contract that the dealer assigns to Ally.

**14. Lease Term** 39 months.

**15. Total Allowed Mileage.** The total mileage allowed on the odometer at lease end is 48,750 miles.
**Extra Miles.** The total allowed mileage includes N/A extra miles that you are buying at $ N/A per mile. If this lease ends on or after the start of the next-to-last monthly period, we will give you a credit for each unused extra mile you bought. **There will be no credit if the lease ends earlier, you buy the vehicle, or the vehicle is a total loss.**

**16. Required Vehicle Insurance Information.** You affirm that liability and physical damage policies that meet our requirements (see the other side) are in force on the date of this lease as follows:
Insurance company name: USAA
Insurance agency name: USAA DIRECT
Agency address: _____
Agency phone no.: 8005318722
Agent's name: USAA DIRECT
Policy no: _____
Deductibles: Collision $ _____ Comprehensive $ _____
**INSURANCE NOTICE.** Our liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the vehicle will not be primary. Liability insurance that you obtain will be primary.

**17. WARRANTY AND EXCLUSION OF WARRANTY.** You have the benefit of the standard manufacturer's warranty unless this box is checked ☐
☐ If this box is checked, you have the benefit of the following warranty: N/A
Warranty papers that are separate from this lease state any coverage limits. The law gives you a warranty that the vehicle conforms to the description in this lease. **THERE ARE NO OTHER EXPRESS WARRANTIES ON THE VEHICLE.**
The following exclusion and limitation of implied warranties does not apply if (1) you signed this lease in Kansas and you are an individual, or (2) you signed this lease in Maine and this lease is primarily for personal, family, or household purposes: Unless Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, **LESSOR MAKES NO IMPLIED WARRANTY OF MERCHANTABILITY, AND THERE IS NO IMPLIED WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE.** If Lessor makes a written warranty or enters into a service contract within 90 days from the date of this lease, then any implied warranty of merchantability and any warranty that the vehicle is fit for a particular purpose are limited in duration to the longer of the term of the written warranty or the term of the service contract.

**18. Optional Insurance, Service Contracts, and Maintenance Agreements.** We do not require any of the insurance, products, or services listed in this section. Your decision to buy them or not buy them is not a factor in our decision to approve this lease. We will try to get any optional insurance coverage(s) that you initial below. A notice you receive when you sign this lease describes the coverage(s) in greater detail. Life insurance and disability insurance may not cover taxes and other amounts due besides the base monthly payment

| Optional Insurance | Coverage | Charge or Premium | Provider | By initialing below, you indicate you want the insurance |
|---|---|---|---|---|
| Life Insurance (Monthly Payment Lease Only) | ___ Lessee ___ Co-Lessee Coverage is for lease term Coverage limit $ N/A | $ N/A | N/A | Lessee/Co-Lessee initials N/A / N/A |
| Disability Insurance (Monthly Payment Lease Only) | Lessee Coverage is for lease term N/A Monthly Coverage limit $ ___ | $ N/A | N/A | Lessee/Co-Lessee initials N/A / N/A |
| N/A | N/A Months N/A Miles Coverage limit $ N/A | $ N/A | N/A | Lessee/Co-Lessee initials N/A / N/A |

| Other Optional Product or Service | | Term | | |
|---|---|---|---|---|
| N/A | | N/A Months, N/A Miles | | |
| N/A | | N/A Months, N/A Miles | | |

### Signatures

**THIS IS THE ENTIRE AGREEMENT.** This lease, including the front and back of this form, contains the entire agreement between you and us relating to the lease of the vehicle. Any change to this lease must be in writing, and we must sign it. No oral changes are binding.
LESSEE X _____ BY X _____ CO-LESSEE X _____
We may delay or refrain from enforcing any of our rights under this lease without losing them.
**NOTICE TO CONSUMER. 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. 2. YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT.**
YOU AGREE TO THE TERMS OF THIS AGREEMENT. BEFORE YOU SIGNED THIS LEASE, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.
YOU CONFIRM THAT YOU SIGNED THIS AGREEMENT AND RECEIVED A COPY AT WEST CHESTER, PA ON 12/17/2013
LESSEE X _____ BY X _____ CO-LESSEE X _____

Lessor agrees to the following: (1) Lessor accepts this lease, (2) If a party is identified in this lease as the intended assignee ("Intended Assignee"), Lessor (i) assigns all right, title, and interest in this lease to the Intended Assignee, under the terms of the Lease Plan Dealer Agreement in effect from time to time and (ii) assigns all right, title, and interest in the leased vehicle to the Intended Assignee, or its designee, under the terms of the Dealer Agreement. Lessor acknowledges that neither the Intended Assignee nor the assignment renders the Dealer Agreement an agent of the assignee.
FAULKNER PONTIAC-BUI
LESSOR _____ BY X _____ TITLE: _____ DATE 2/17/2013

SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS INCLUDING A PROHIBITION OF TRANSFER OF YOUR INTEREST

### Authorization For Automatic Electronic Payments - Optional - Monthly Payment Lease Only

You have the option to ask that your monthly payments be transferred to us automatically and electronically from your checking or savings account when each monthly payment is due. We do not charge for this optional service. If you elect this optional service, we will send you a confirmation letter that will tell you the due date of the first payment that will be withdrawn. If a due date falls on a weekend or holiday, funds will be withdrawn on the next business day. If the amount to be transferred will vary from the previous transfer, we will reflect the amount to be transferred on your statement.
To elect this optional service, please complete the authorization below.

**Authorization**
Name of your financial institution ("Bank"): N/A
ABA routing number: N/A
Bank account number: N/A
☐ Checking account    ☐ Savings account - Please contact your financial institution for assistance
Name(s) on account: N/A

You authorize and request us (lessor, any assignee, and any servicer) to initiate electronic debit entries or use any other commercially reasonable accepted practice to charge your Bank account identified above. You authorize and request Bank to honor debit entries we initiate and treat these charges to your account. This authorization relates to your monthly lease payment. This authorization will remain in effect until all amounts related to the lease are paid in full, or until you cancel this authorization. To cancel, you must call us at 1-888-925-2559 at least three business days before the next payment due date. This is the only way you may cancel this authorization.

Lessee: X _____
Anyone else whose signature is required to withdraw funds from the Bank account: X _____

AF-671-MULTISTATE-3 8/12 IA, KS, ME, PA, RI, SC
Copyright 2012 Ally Financial. All Rights Reserved. SmartLease is a registered service mark of Ally Financial.
Ally Financial - Original    Customer - Blue    Dealer - Yellow    Filing - Green    Lease Agreement 10

**21. Charge for Fines and Other Items.** You will pay promptly any fine, parking ticket, toll charge, toll penalty charge, towing charge, impoundment charge relating to the vehicle. If you do not, we may pay it and you will owe us. For each such fine or charge, you will pay us the amount we pay. If you signed this lease in Pennsylvania, Rhode Island, or South Carolina, you will also pay us $10. If we pay to remove a lien we did not agree to, you will pay us the amount we pay.

### Insurance, Use, and Care of the Vehicle

**22. Required Vehicle Insurance.** You must insure the vehicle through liability and physical damage policies acceptable to us. The policies must not exclude or restrict coverage if you were to drive the vehicle, or when the driver is someone you allow to drive the vehicle or who is likely to drive the vehicle. The policies must show any additional insureds and loss payees that we require. You must give us proof of insurance when we ask. **We require no other insurance.**

Liability insurance must (a) cover at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries to any one accident, or (b) have a combined single limit of at least $500,000 for bodily injuries and property damage for any one accident.

For trucks of 10,000 lbs. GVW or more and public conveyance vehicles, liability insurance must instead (a) provide primary coverage of at least $50,000 for property damage, $100,000 for bodily injuries to any one person, and $300,000 for bodily injuries for any one accident, and umbrella coverage of $1,000,000 or (b) have a combined single limit of at least $1,000,000 for bodily injuries and property damage for any one accident.

Physical damage insurance must be for the full value of the vehicle with deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss.

If you move to a new state, we will require coverage amounts in keeping with our requirements for the new state. We now estimate that those amounts will be the same as those in this lease, but they may be higher.

**23. Use.** You will not:
— Use the vehicle illegally, improperly, or for hire.
— Use the vehicle in a way that causes the insurance coverage on the vehicle to be ineffective.
— Remove the vehicle from the United States, except for trips to Canada of under 60 days.
— Move the vehicle to another state for more than 30 days without telling us.
— Change the vehicle without our written consent.
— Replace parts, accessories, or tires with rented or leased items.
— Expose the vehicle to seizure, confiscation, forfeiture, or other involuntary transfer.
— Allow a lien to be placed on the vehicle unless we agree.

You will not let anyone else do any of these things.

**24. Maintenance, Repairs, Operating Expenses, and Damage.** You will maintain and repair the vehicle to keep it in good condition. Replacement sheet metal must be new original equipment manufacturer parts. Other replacement parts must be original equipment manufacturer parts or parts of equal quality and design. (If insurance will pay for repairs, ask your insurance company to specify original equipment manufacturer sheet metal.) You will pay all maintenance, repair, and operating expenses, including gas and oil. If the odometer stops working, you must fix it immediately. You will service the vehicle as the manufacturer recommends. You will follow the manufacturer's instructions in any recall. If you don't do these things, we may do them. You will owe us our cost if we do. We may inspect the vehicle at any reasonable time and place.

When you take possession of the vehicle, you take on the risks of loss of the vehicle and of damage to it. If the vehicle is damaged, stolen, or destroyed and money becomes available from insurance, a judgment, a settlement, or the like, we will treat the money as an insurance settlement. We and/or Vehicle Asset Universal Leasing Trust will be entitled to this money. If the lease ends in connection with our receipt of the money, we will treat any money we do not use to repair the vehicle as sale proceeds.

**25. Excess Wear.** Excess wear is wear that is beyond the minor wear reasonably expected to result from ordinary, everyday use, assuming that you use the vehicle as this lease permits (see Section 23) and maintain it as this lease requires (see Section 24). Excess wear includes: (a) glass that is damaged, engraved, or that you tinted; (b) a damaged or corroded body, trim, frame, crossmember, suspension, engine, powertrain, or other mechanical part; (c) damaged paint; (d) a torn, damaged, or stained interior or trunkliner; (e) sheet metal that is not original equipment sheet metal, (f) missing equipment or parts that were in or on the vehicle when delivered and not replaced with equipment or parts of equal quality and design (including a missing wheel, wheel cover, jack, or wheel wrench); (g) a tire (including spare) that is unsafe, is not the size and type the manufacturer recommends, is recapped or a snow tire, or has less than 1/8 inch of tread left at the shallowest point; (h) a damaged or worn brake that does not meet government safety standards; (i) oil leaks or low oil pressure; (j) a malfunctioning electrical system, battery, or lights; (k) holes that you drilled in the vehicle; (l) any change to the vehicle that damages the vehicle or compromises its structural integrity; (m) any other condition that makes the vehicle run in a noisy, rough, improper, unsafe, or unlawful way; and (n) any other damage, whether or not insurance covers it.

### When the Lease Can End

**26. Scheduled End.**
**Monthly Payment Lease** - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date on which the second payment is due (even if that date is not an actual calendar date because the month has too few days) (See Section 2(a)); (2) Move that date forward by the number of months in the lease term (Section 14), minus one month; and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

**Single Payment Lease** - This lease is scheduled to end on the date that is determined as follows: (1) Start with the date of the lease; (2) Move that date forward by the number of months in the lease term (Section 14); and (3) Subtract one day. If the resulting date is not an actual calendar date (because the month has too few days), the scheduled lease end date is the last actual date in that month minus one day.

**27. Lease End Daily Extension.** At scheduled lease end, if you keep the vehicle and do not buy it at that time, you elect to extend the lease. You will pay a daily extension charge beginning on the eighth day after the scheduled lease end date and ending when you return the vehicle. The charge per day is the greater of: (1) 0.0017 times the Residual Value (Section 7(d)); or (2) $25. Unless we agree to a longer extension, you may not extend the lease for more than 30 days. We may set a shorter limit. During the daily extension period, you agree to comply with the terms of this lease, other than terms that apply to monthly payments and early end. The total allowed mileage will not increase.

**28. Early End.** You may end this lease anytime. We may end this lease if you are in default or if the vehicle is a total loss. However, if you signed this lease in Maine and the vehicle is a total loss, we will not end this lease if you substitute a vehicle of equal kind and quality satisfactory to us. If you substitute a vehicle, any insurance proceeds must be used to buy the vehicle.

**29. Default.** If you signed this lease outside Iowa: You will be in default if you do not pay on time. If this lease is a consumer lease (see definition in this section) and the prospect of payment, performance, or realization of our interest in the vehicle is significantly impaired, or if this is not a consumer lease, you will also be in default if any of Items 1-4 listed below happens.

If you signed this lease in Iowa: You will be in default if you pay more than 10 days late or not at all. If this lease is a consumer lease (see definition in this section) and there is a material impairment of the condition, value, or protection of the vehicle, our right in the vehicle, or the prospect that you will pay what you owe under this lease, or if this lease is not a consumer lease, you will also be in default if any of Items 1-4 listed below happens.

1. You made a material misrepresentation when you applied for this lease.
2. You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.
3. You break any other agreements in this lease.
4. You do anything the law says is a default.

This lease is a consumer lease if it is primarily for a personal, family, or household purpose.

If you signed this lease in Iowa or Rhode Island, the law may allow you to cure a default if this lease is a consumer lease. If you signed this lease in Kansas, Maine, or South Carolina, the law may allow you to cure a default if this lease is a consumer lease and if you are in default only because you paid late or not at all. If you cure the default, you will no longer be in default.

If you signed this lease in Rhode Island, and if this lease is a consumer lease and you are in default, you have the right to reinstate this lease after we take the vehicle from you. If you reinstate this lease, you will get the vehicle back and you will not lose any rights or options this lease gives you.

Otherwise, if you are in default, we may end this lease and exercise our rights upon default (see Section 37).

### At Lease End

**30. Vehicle Return.** Unless you buy the vehicle, you will return the vehicle (including any dealer-installed options you do not buy outright) at lease end to any reasonable place we tell you. After you return the vehicle, you will call us promptly and tell us where you returned the vehicle.

**31. Option to Buy the Vehicle.** You have an option to buy the vehicle. The price to buy the vehicle after the start of the last monthly period is disclosed in Section 9. The purchase option price disclosed in Section 9 is the price for which we would sell the vehicle to you after the start of the last monthly period.

If this is a monthly payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the base monthly payment times the number of payments not yet due, minus (3) any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

If this is a single payment lease, the price to buy the vehicle before the start of the last monthly period is: (1) the price to buy the vehicle disclosed in Section 9, plus (2) the Remaining Prepaid Depreciation (Section 36(b)). If this is a single payment lease and you buy the vehicle before the start of the last monthly period, we will give you a credit for (1) the Remaining Prepaid Depreciation (Section 36(b)), plus (2) any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

Regardless of when you buy the vehicle, you must also pay any related official fees and taxes, plus any amounts due because you broke agreements in this lease.

**32. Odometer Disclosure.** Federal law requires you to tell us the vehicle's mileage in connection with a transfer of vehicle ownership. You may be fined and/or imprisoned if you do not complete the disclosure or if you make a false statement.

### What You Owe at Lease End

**33. What You Owe If You Buy the Vehicle.** If you have paid us the amount you must pay to buy the vehicle under Section 31 and kept your agreements, you will owe us nothing more.

**34. What You Owe at Scheduled End, or If You End This Lease On or After the Start of the Last Monthly Period, and You Do Not Buy the Vehicle.** You will owe us: (1) any Disposition Fee shown in Section 3 (unless waived; see Section 13), (2) any excess mileage charge (Sections 8, 15, and 19), (3) any estimated or actual cost of repairing excess wear (we do not have to make repairs); (4) any lease end daily extension charge (Section 27); and (5) any additional amounts due under Section 40. We will give you any credits due under Section 40. However, if the vehicle is a total loss before the scheduled lease end date, you will owe us the amount described in Section 38 (Monthly Payment Lease) or Section 39 (Single Payment Lease).

**35. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Monthly Payment Lease.**

**(a) What You Owe:** You will owe us an Early End Charge as follows:
The base monthly payment times the number of payments not yet due,
- Any unearned rent charge figured by the Actuarial Method (see Section 41), based on the number of full monthly periods between early end and scheduled end
- Any Surplus (see definition in this section) on the vehicle sale
= The total. If this total is less than zero, we will not give you a refund or credit.

---

Value exceeds Residual Value (Section 7(d)), the excess is the Surplus. If the Realized Value is the same as or less than Residual Value, there is no Surplus. **Your Right to Obtain an Independent Appraisal of the Vehicle's Wholesale Value.** You may get a professional appraisal of the wholesale value of the vehicle by an independent third party acceptable to us. The appraised value will then be used as the Realized Value (Section 35(b)).

**(c) Definition of "Early Excess Mileage and Wear Charge":** Our estimated or actual cost of early repairs the vehicle needs because of excess wear (we do not have to make repairs), plus any excess mileage charge (Sections 8, 15, and 19). This charge will not exceed the Residual Value (Section 7(d)) of the vehicle minus its Realized Value (Section 35(b)).

**36. What You Owe If You End This Lease Before the Start of the Last Monthly Period, and You Do Not Buy the Vehicle - Single Payment Lease.**

**(a) What You Owe:** The single scheduled payment due at lease signing prepays the rent charge, depreciation, and any amortized amounts.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for any Surplus (see Section 35(b)), up to the amount of the Remaining Prepaid Depreciation (see definition in this section). If the vehicle's Realized Value (Section 35(b)) is less than its Residual Value, you will also owe us any Early Excess Mileage and Wear Charge (Section 35(c)).

You will also owe us: (1) any Disposition Fee shown in Section 3 (unless waived, see Section 13); and (2) any additional amounts due under Section 40. We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

**(b) Definition of "Remaining Prepaid Depreciation":** The Remaining Prepaid Depreciation is:
   The base single scheduled payment
+ The number of months in the lease
x The number of full monthly periods between early end and the scheduled lease end date
- The unearned rent charge credit

**37. Our Rights Upon Default (Including What You Owe Upon Default).** If you are in default, we may, subject to any right to cure the default that you may have:
— End this lease and require you to pay the amount you would have owed: (1) under Section 35 (Monthly Payment Lease) or Section 36 (Single Payment Lease) if you had ended the lease before the start of the last monthly period; or (2) under Section 34 if you had ended the lease on or after the start of the last monthly period.
— Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle. If you signed this lease in Rhode Island, we may not enter property you own or rent unless you consent. If the vehicle has an electronic locating device, we may use the device to find the vehicle.
— Sue you for damages and to get the vehicle back.
— Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. We may take and store any personal items that are in the vehicle. If you do not ask for these items back, we may dispose of them as the law allows. You will pay our reasonable expenses of taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle. If you signed this lease in Pennsylvania, Rhode Island, or South Carolina, or if this lease is not primarily for a personal, family, or household purpose, these expenses may include attorney's fees, collection costs, and court costs

If you signed this lease in Kansas and this lease is primarily for a personal, family, or household purpose, these expenses may also include our reasonable collection costs. Collection costs may include such costs. Collection costs may also include collection agency fees or attorney's fees, but not both. Collection costs will not include costs our salaried employees incur. Collection costs will not exceed 15% of what you owe.

If you signed this lease in South Carolina and this lease is primarily for a personal, family, or household purpose, attorney's fees will not exceed 15% of what you owe.

**38. Total Loss Before the Scheduled Lease End Date - Monthly Payment Lease.**

**(a) Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 22), you have gap protection.

If the money we get from your insurance is more than the Unamortized Capitalized Cost (see definition in this section), we will not give you a credit for any excess.

If the money we get from your insurance is less than the Unamortized Capitalized Cost (see definition in this section), you will owe the difference up to the amount of your insurance deductible. If you signed this lease outside Maine, and if the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 15, and 19), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 40. We will give you any credits due under Section 40.

**(b) Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 22). You will owe us: (1) the Unamortized Capitalized Cost (see definition in this section); minus (2) any money we get from your insurance, minus (3) if the vehicle is returned to us, its Realized Value (Section 35(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 35(b)). If any money we get from your insurance plus the realized value exceeds the Unamortized Capitalized Cost, we will not give you a credit for any excess.

You will also owe us any additional amounts due under Section 40, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 13). We will give you any credits due under Section 40.

**(c) Definition of "Unamortized Capitalized Cost":** The base monthly payment times the number of payments not yet due, minus any unearned rent charge figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end, plus the Residual Value (Section 7(d)).

**39. Total Loss Before the Scheduled Lease End Date - Single Payment Lease.**

**(a) Total Loss With a Settlement Under the Required Insurance Coverage:** If the vehicle is a total loss before the scheduled lease end date, and we get an insurance settlement under a policy that complies with our requirements (Section 22), you have gap protection.

We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

We will give you a credit for the Remaining Prepaid Depreciation (Section 36(b)).

If the money we get from your insurance is more than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 36(b)), we will not give you a credit for any excess.

If the money we get from your insurance is less than the sum of the Residual Value (Section 7(d)) plus the Remaining Prepaid Depreciation (Section 36(b)), you will owe the difference up to the amount of your insurance deductible. If you signed this lease outside Maine, and if the difference is more than your insurance deductible, you will also owe an excess mileage charge (Sections 8, 15, and 19), up to the amount by which the difference exceeds your deductible. We will figure the excess mileage charge as if the lease had ended as scheduled. There will be no credit for unused extra miles.

You will also owe us any additional amounts due under Section 40. We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

**(b) Total Loss Without a Settlement Under the Required Insurance Coverage:** There is no gap protection if the vehicle is a total loss before the scheduled lease end date and: (1) we do not get an insurance settlement; or (2) we get an insurance settlement under a policy that does not comply with our requirements (see Section 22). You will owe us: (1) the Residual Value (Section 7(d)); minus (2) any money we get from your insurance; minus (3) if the vehicle is returned to us, its Realized Value (Section 35(b)). If the vehicle is not returned to us, the Realized Value is zero, and you will not have an independent appraisal right (Section 35(b)). If any money we get from your insurance, plus the Realized Value exceeds the Residual Value, we will give you a credit for the excess, up to the amount of the Remaining Prepaid Depreciation (Section 36(b)). We will give you a credit for any unearned rent charge, figured by the Actuarial Method (see Section 41) based on the number of full monthly periods between early end and scheduled end.

You will also owe us any additional amounts due under Section 40, plus, if the vehicle is returned to us, any Disposition Fee shown in Section 3 (unless waived; see Section 13). We will give you any credits due under Section 40.

If the sum of the credits exceeds the sum of the amounts due, we will refund the difference to you. If the sum of the amounts due exceeds the sum of the credits, you will owe us the difference.

**40. Additional Credits and Amounts Due.** Regardless of how the lease ends, you will owe us any unpaid fees and taxes, including any tax on what you owe because this lease ends early, plus any amounts due because you broke agreements in this lease. We may cancel any optional insurance or service, maintenance, or other contracts that we financed for you. We will give you a credit for any amount we get from cancellations. If the lease ends on or after the start of the next-to-last monthly period and you do not buy the vehicle, we will give you a credit for any unused extra miles, unless the vehicle is a total loss (see Section 15).

**41. Actuarial Method of Figuring the Unearned Rent Charge.** We will use the Actuarial Method to figure the unearned rent charge on a monthly basis. We will treat the rent charge for each monthly period as fully earned on the period's first day. If this is a monthly payment lease, we will treat each monthly payment that you made as if we received it on its due date. We will give you a written explanation of the Actuarial Method upon request.

**42. NOTICE:** If you do not meet your lease obligations, you may lose use of the vehicle.

**43. Security Deposit.** If you paid a security deposit, we will use it at lease end to pay anything you owe under this lease and do not pay. We will not pay you interest on the security deposit. We will not add to the security deposit any proceeds, money, or funds we receive from the security deposit. After lease end, we will give back any part of the security deposit that remains.

### Additional Terms

**44. Assignment By Lessor.** If this lease is assigned, the assignee may designate Vehicle Asset Universal Leasing Trust, or its trustee, as agent to hold title for the benefit of the assignee on the vehicle's certificate of title and/or registration.

Any sale and assignment will not be considered to change materially your duties, burden, or risk under this lease.

If we assign this lease, you will not receive notice of assignment.

**45. PROHIBITION OF TRANSFER OF YOUR INTEREST.** YOU WILL NOT SUBLEASE OR OTHERWISE TRANSFER (EXCEPT TO YOUR ESTATE) ANY RIGHT OR INTEREST YOU HAVE UNDER THIS LEASE OR IN THE VEHICLE WITHOUT OUR PRIOR WRITTEN CONSENT.

**46. Indemnity.** You will protect us from all losses, damages, injuries, claims, demands, and expenses arising out of the condition, maintenance, use, or operation of the vehicle. You agree to indemnify, and hold harmless, us and our assigns from all such losses, damages, injuries, claims, demands, and expenses.

**47. Servicing and Collection Contacts.** We may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. We may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

---

**SEE OTHER SIDE FOR OTHER IMPORTANT AGREEMENTS**