United States Bankruptcy Court

Eastern District of Pennsylvania

In re:                                                                                          Case No. 20-10520-amc

Robin Lynn Busby                                                                          Chapter 13

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0313-2 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Aug 01, 2022 | Form ID: pdf900 | Total Noticed: 7 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 03, 2022:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | #+ | Robin Lynn Busby, 1100 Hillcrest Road, Penn Valley, PA 19072-1224 |
| cr | + | HSBC BANK USA, NATIONAL ASSOCIATION, 14841 Dallas Parkway, Suite 425, Dallas, TX 75254-8067 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**

Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| smg | | Email/Text: megan.harper@phila.gov | Aug 01 2022 23:59:00 | City of Philadelphia, City of Philadelphia Law Dept., Tax Unit/Bankruptcy Dept, 1515 Arch Street 15th Floor, Philadelphia, PA 19102-1595 |
| smg | | Email/Text: RVSVCBICNOTICE1@state.pa.us | Aug 01 2022 23:59:00 | Pennsylvania Department of Revenue, Bankruptcy Division, P.O. Box 280946, Harrisburg, PA 17128-0946 |
| cr | + | Email/PDF: acg.acg.ebn@aisinfo.com | Aug 02 2022 00:04:02 | Ally Financial, c/o AIS Portfolio Services, LP, 4515 N Santa Fe Ave. Dept. APS, Oklahoma City, OK 73118-7901 |
| cr | + | Email/Text: bkelectronicnoticecourtmail@computershare.com | Aug 01 2022 23:59:00 | SPECIALIZED LOAN SERVICING LLC, ., 8742 Lucent Blvd, Suite 300, Highlands Rnach, CO 80129-2386 |
| cr | + | Email/Text: SLSBKNotices@nationalbankruptcy.com | Aug 01 2022 23:59:00 | SPECIALIZED LOAN SERVICING, LLC, 14841 Dallas Pkwy Suite 425, Dallas, TX 75254-8067 |

TOTAL: 5

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| cr | | HSBC Bank USA, National Association |

TOTAL: 1 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains

**the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 03, 2022                    Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 1, 2022 at the address(es) listed below:**

| Name | Email Address |
| --- | --- |
| ADAM BRADLEY HALL | on behalf of Creditor HSBC Bank USA  National Association, as Trustee for Wells Fargo Mortgage Backed Securities 2007-7 Trust amps@manleydeas.com |
| HOLLY SMITH MILLER | on behalf of Creditor SMS Financial JDC  LP hsmiller@gsbblaw.com, abrown@gsbblaw.com |
| JEFFREY B. MCCARRON | on behalf of Barry Krengel jmccarron@swartzcampbell.com  phila-efiling@swartzcampbell.com |
| KENNETH E. WEST | ecfemails@ph13trustee.com  philaecf@gmail.com |
| PAUL A.R. STEWART | on behalf of Debtor Robin Lynn Busby pstewart@legalhelm.com  jurisabnelson@gmail.com |
| REBECCA ANN SOLARZ | on behalf of Creditor HSBC Bank USA  National Association, as Trustee for Wells Fargo Mortgage Backed Securities 2007-7 Trust bkgroup@kmllawgroup.com, rsolarz@kmllawgroup.com |
| RONALD S. GELLERT | on behalf of Creditor SMS Financial JDC  LP rgellert@gsbblaw.com, abrown@gsbblaw.com |
| United States Trustee | USTPRegion03.PH.ECF@usdoj.gov |

TOTAL: 8

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | **Chapter 13** |
| | : | |
| **ROBIN LYNN BUSBY,** | : | |
| | : | **Bankruptcy No. 20-10520-AMC** |
| **DEBTOR** | : | |
| _____ | : | |

Ashely M. Chan, United States Bankruptcy Judge

**OPINION**

## I.    INTRODUCTION

The debtor in the instant re-opened chapter 13 bankruptcy case, Robin Busby ("Debtor"),

seeks an award of damages under 11 U.S.C. § 362(k) against SMS Financial JDC, LP ("SMS"),

which held a mortgage against Debtor's former residence, and its counsel, Barry Krengel, Esq.

("Attorney Krengel"), for alleged willful violations of the automatic stay based upon the

continuation of proceedings initiated pre-petition in the Montgomery County Court of Common

Pleas ("State Court") against Debtor's ex-husband, Robert Busby ("Mr. Busby"), which resulted

in the State Court striking a mortgage satisfaction which had erroneously released Mr. Busby

from his obligation on SMS's mortgage.

Debtor simultaneously seeks an award of damages for contempt of the discharge

injunction under 11 U.S.C. § 524 and the Court's contempt power against SMS and Attorney

Krengel based upon Attorney Krengel's demands on behalf of SMS to have SMS's mortgage

against Mr. Busby's tenant in common interest in the Debtor's residence paid off from the

proceeds of its post-discharge sale.

Ultimately, as more fully described below, the Court finds that because Debtor has not

established that either SMS or Attorney Krengel was aware of Debtor's bankruptcy during the

relevant State Court proceedings or that either SMS or Attorney Krengel violated the automatic

1

stay in connection with those proceedings, Debtor is not entitled to an award of damages under

11 U.S.C § 362(k). Furthermore, for reasons described more fully below, because Debtor has not

established that SMS or Attorney Krengel violated the discharge injunction by seeking payment

of SMS's mortgage against Mr. Busby's tenant in common interest in Debtor's former residence,

she is not entitled to an award of damages for contempt of the discharge injunction.

## II.    FACTUAL BACKGROUND

On March 16, 2007, Debtor and her then husband, Mr. Busby, executed a loan agreement

in the amount of $100,000 in favor of Shelter Mortgage, LLC d/b/a Guaranty Northeast

Mortgage, secured by a mortgage ("Mortgage") on real property owned jointly by Debtor and

Mr. Busby as tenants by the entireties located at 1100 Hillcrest Road, Penn Valley, PA

("Property"). Case No. 20-10520 ECF No. ("ECF") 116, SMS Fin. Obj. to Debtor's Mot. for

Contempt ("SMS Obj.") Ex. A, Ex. I at 1. Guaranty Northeast Mortgage subsequently assigned

the Mortgage to Guaranty Bank. SMS Obj. Ex. I at 2. *See also* SMS Obj. Ex. C at 9, Ex. E at 1.

On September 22, 2016, the Debtor and Mr. Busby executed a property settlement

agreement ("PSA") in connection with divorce proceedings between them. SMS Obj. Ex. C.

Pursuant to the PSA, in relevant part:

> Husband and Wife hold title as tenants by the entireties to the premises identified
> as 1100 Hillcrest Road, Penn Valley, Pennsylvania 19072, Montgomery County
> Pennsylvania, Property ID 40-00-25684-00-7 ('Marital Premises'). The Marital
> Premises is encumbered by a mortgage held by Wells Fargo Mortgage and a line
> of credit held by Guaranty Bank. At the time of the execution of this Agreement
> Wife resides and is in control of the Marital Premises. Upon execution of this
> Agreement, Husband agrees to sign a deed transferring the Marital Premises to
> Wife and Wife's counsel shall hold the deed in escrow and not record the same
> until the time of refinance as explained below. In the event that the Marital
> Premises cannot be refinanced and must be sold as detailed below, the deed shall
> not be recorded. Wife will timely pay: the mortgage; line of credit; other expenses
> associated with the transfer of the Marital Premises; all liens and taxes owed on
> the property and indemnify and hold Husband harmless from the same.

2

Wife shall, within 60 days from the date of execution of this Agreement, take steps to refinance the mortgage and line of credit into her own name or otherwise remove Husband's name from the same.

In the event that Wife cannot refinance the mortgage and line of credit into her own name or otherwise remove Husband's name from the same, Wife shall list the Marital Premises for sale with a realtor of her choosing. If the Marital Premises is listed for sale, the parties shall follow all recommendations of the realtor, including the initial list price and any additional subsequent price reductions. The parties shall accept any *bona fide* offer to purchase the Marital Premises. Upon the sale of the Marital Premises, the net sales proceeds will be distributed as follows: $15,000 shall be divided evenly among the parties' three children to be used for tuition or wedding and the remainder of the proceeds shall go to Wife.

In the event that the title to the Marital Premises is properly transferred to reflect Wife's ownership in Fee Simple, and then the property is listed and sold within five years from the execution of this Agreement, Wife shall tender $15,000 divided evenly among the parties' three Children to be used for college tuition or wedding. The remainder of the proceeds shall go to Wife.

*Id.* at 9.

 In accordance with the PSA, Mr. Busby signed a deed transferring the Property to the Debtor ("PSA Deed") which was attached to the PSA, but not recorded. *See id.* at Ex. D.

The Court of Common Pleas of Montgomery County subsequently granted a divorce decree on October 20, 2016, in case number 2014-17853, divorcing Debtor and Mr. Busby ("Divorce Decree"). *Id.* at Ex. B. The PSA was incorporated into the Divorce Decree by reference. *Id.* The Debtor never refinanced nor paid off the Mortgage, and did not remove Mr. Busby's name from the obligation. Accordingly, the PSA Deed remained unrecorded.

Instead, on January 20, 2017, the Debtor and Guaranty Bank entered into a settlement agreement ("2017 Settlement Agreement") pursuant to which the Debtor agreed "to pay to Guaranty Bank the sum of $20,000 in satisfaction of her obligations under the aforesaid Mortgage and Note" and "Guaranty Bank agree[d] to accept the sum of $20,000 in satisfaction of Robin Busby's obligations under the aforesaid Mortgage and Note." *Id.* at Ex. E at 1, 2. The

3

2017 Settlement Agreement further provided that "[w]ithin ninety (90) days from receipt by Guaranty Bank of the sum of $20,000 from Robin Busby, Guaranty Bank shall cause to be recorded a Release of Mortgage as to Robin Busby ONLY." *Id.* at 2. The 2017 Settlement Agreement, signed by the Debtor, specifically acknowledged that the Property "is now owned by Robert Busby and Robin Busby as tenants in common." *Id.* at 1. The 2017 Settlement Agreement further provided "[t]his Agreement shall be effective as a full and final accord and satisfaction and release of each matter in connection with those matters set forth herein above" and "shall be binding on and shall inure to the benefit of the Parties." *Id.* at 3. The Debtor paid the promised $20,000.00 to Guaranty Bank. Thereafter, on March 28, 2017, Guaranty Bank erroneously filed a satisfaction of mortgage with the Montgomery County Recorder of Deeds which released both the Debtor and Mr. Busby from their obligations under the Mortgage rather than solely the Debtor ("Mortgage Satisfaction"). *Id.* at Ex. G at 34-37, Ex. I at 3.

On January 29, 2018, the Federal Deposit Insurance Corporation, the receiver for Guaranty Bank, assigned the Mortgage to SMS. *Id.* at Ex. F. On April 25, 2018, SMS through its counsel, Attorney Krengel, filed a petition to strike the Mortgage Satisfaction ("Petition to Strike") in the State Court against Mr. Busby, seeking to have the State Court strike the Mortgage Satisfaction and permit SMS to file an amended Mortgage satisfaction releasing only the Debtor. *Id.* at Ex. G ¶ 11.

On June 4, 2018, Mr. Busby answered the Petition to Strike. *Id.* at Ex. I at 3. On January 20, 2020, the State Court scheduled a hearing on the Petition to Strike for February 4, 2020 and mailed copies of the scheduling order to Mr. Busby at his last known address and to the Debtor at the Property. *Id.*

On January 28, 2020, the Debtor filed a voluntary petition under chapter 13 of the

Bankruptcy Code ("Petition Date"). ECF 1. On February 4, 2020, only SMS and Mr. Busby

appeared at the hearing on the Petition to Strike in State Court. SMS Obj. Ex. I at 4. At that

hearing, SMS appears to have represented to the State Court that it was "not seeking to pursue a

personal judgment or any personal liability against Robert G. Busby, but rather only an *in rem*

judgment against the Subject Property." *Id.*

After the hearing on the Petition to Strike, the State Court issued an order dated February

7, 2020 ("February 2020 Order") providing that:

1. The Petition to Strike Mortgage Satisfaction is hereby GRANTED.
2. The Montgomery County Recorder of Deeds is directed to reflect on their records the striking of the Mortgage Satisfaction filed on March 28, 2017 at instrument # 2017022018, SAT.BK.1553, PG 02193 to 02195.
3. [SMS] is permitted to file a Release of Mortgage as to Robin Busby.
4. [SMS] is permitted to pursue an in rem judgment against [the Property].
5. [SMS] and any successor in interests are prohibited from pursuing a personal judgment against Robert Busby.

*Id.* at Ex. H.

On August 2, 2021, Attorney Krengel emailed Jane Broderson ("Ms. Broderson"), the

Debtor's realtor in connection with the sale of the Property, representing:

…I represent SMS Financial JDC, LP, who possess a mortgage on the [Property]. Pursuant to our discussion attached please find a court order dated Feb. 7, 2020 striking the original mortgage satisfaction that was incorrectly filed against Robin and Robert Busby. I have also attached the Partial Release of Mortgage as it pertains to Robin Busby. Therefore, the sale proceeds should be applied only to Robert's share to satisfy the mortgage.

ECF 111, Debtor's Mot. for Contempt ("Mot. for Contempt") Ex. B.

On August 5, 2021, this Court entered an order of discharge in the Debtor's bankruptcy case

("Discharge Order"). ECF 99. On the same day, the Debtor executed an Agreement of Sale for

the Property with settlement scheduled for October 4, 2021.

On August 23, 2021, Attorney Krengel emailed Angie Szczepaniak, a settlement officer

with Trident Land Transfer Company ("Trident") advising "I represent SMS Financial JDC LP, a

mortgage holder against Mr. Busby, co-owner of [the Property]. Attached is a court order and

partial release of mortgage. However, the mortgage is still extant with regards to Mr. Busby's

share of the proceeds. Please be advised that my client's payoff amount is $103,636.33 with a

per diem of $9.24." ECF 125, Krengel Aff. ("Krengel Aff.") Ex. A.

The same day, counsel for the Debtor, Paul Stewart, Esq. ("Attorney Stewart") emailed

Attorney Krengel representing:

> I am [sic] represent Robin Busby, owner of the Property. I direct your attention to
> two facts of record. On 9/22/16, Robert Busby deeded all his title interests to
> Robin Busby pursuant to their property settlement agreement. Robin Busby has
> been the sole owner of title since then. On 1/28/20: Robin Busby sought relief
> under Chapter 13 of the bankruptcy code case no. 20-10520. She obtained her
> order of discharge on 8/5/2021. To the extent you claim any interest in title: it is
> void or discharged.

Mot. for Contempt Ex. C.

Attorney Stewart's misleading representation that the Debtor had been the sole owner of the

Property since September 2016 pursuant to the PSA completely ignored and failed to mention

that the PSA Deed was to be held in escrow pending the satisfaction of certain conditions which

objectively never came to pass, and that the PSA Deed was never recorded.

On August 26, 2021, Attorney Krengel emailed Attorney Stewart representing:

> [a]s you are well aware the above property owners are Robin and Robert Busby
> according to the recorder of deeds in Montgomery county [sic]. In fact, you
> acknowledged as much in your bankruptcy filing by designating the property as
> tenancy by the entireties. However, the property is not held as tenancy by the
> entirety; instead, Robin and Robert are tenants in common. On October 20, 2016
> when the Busby's [sic] divorce decree was entered, by operation of law, the
> Busby's [sic] owned the property as tenants in common. On Jan. 20, 2017 Robin
> entered into the Settlement Agreement and General Release of Claims with
> Guaranty Bank and admitted she owned the property with Robert as tenants in
> common. The motion to strike the mortgage in Montgomery county [sic] was only

6

> filed against Roberts' [sic] tenant in common interest; and therefore, the
> bankruptcy was not implicated. Moreover, Robin was advised of the hearing but
> chose not to appear. The judge's decision is attached for your review which also
> found the property to be held as tenants in common. With knowledge of the facts,
> I believe any effort to vacate the judge's order would be in bad faith and
> responded to appropriately.

*Id.* at Ex. D.

The same day, Attorney Stewart emailed Attorney Krengel back stating:

> [p]lease see attached deed from Robert and Robin Busby to Robin Busby signed
> on 9/22/18 [sic]. This signed deed was part and parcel of the final property
> settlement agreement filed with the court prior to the Court signing a Divorce
> Decree dated 10/20/16. (See attached Divorce Records and Please [sic] maintain
> these records in strict confidentiality.)[.] I think you have access to these materials
> – and you certainly made representations to the court that this property was held
> as tenants in common at the time of divorce – however, the record reflects the
> property was transferred as part of the divorce before entry of decree. To the
> extent the initial bankruptcy filings reflected the property was held as tenants in
> common [sic] – that error was corrected in the bankruptcy case when the debtor
> provided her divorce decree documents to bankruptcy counsel. Meanwhile, the
> US Bankruptcy code [sic] provides for automatic stay relief to Section 362. I
> direct your attention to Section 362 subsections 3, 4, & 5. Each of these
> subsections prohibit anyone to act to create, perfect or enforce any lien against the
> debtor or property of the estate. It is clear from your petition that the remedy
> sought and the effect of the court order was to perfect a lien against property of
> the estate. I would suggest that further endeavors to create, perfect or enforce a
> lien – would be a violation of the Discharge Order and could result in a finding of
> civil contempt against you and your client. See *Taggart v. Lorenzen*, 139 S. Ct.
> 1795 (2019). I have attached the Discharge Order dated 8/5/21 for Debtor Robin
> Busby.

*Id.* at Ex. A.

Debtor claims that on September 2, 2021, Attorney Stewart emailed Attorney Krengel

seeking to have him file a motion to vacate the February 2020 Order and that on September 10,

2021, Attorney Krengel responded to Attorney Stewart via email asking "[h]ow much are you

willing to pay my client?" *See* Mot. for Contempt ¶ 18, Ex. F. The same day, Attorney Stewart

emailed Ms. Broderson a copy of the Discharge Order. *Id.* at Ex. J.

7

On September 15, 2021, Attorney Krengel emailed Amy Sniras ("Ms. Sniras"), Vice

President of Operations for Trident, advising that "SMS Financial JDC, LP's, payoff amount is

$101,858.67" and that per diem is $11.39.[1] *Id.* at Ex. G.

On September 17, 2021, Attorney Stewart filed a motion to vacate the February 2020

Order ("Motion to Vacate") in the State Court arguing that Debtor should have been added as an

indispensable party to the Petition to Strike and that the Petition to Strike violated the automatic

stay pursuant to 11 U.S.C. § 362(a). *Id.* at Ex. K. ¶¶ 3, 6, 7, 12, 20. Subsequently, by letter dated

September 24, 2021, SMS provided a formal letter to Ms. Sniras at Trident reflecting a

$101,824.52 payoff request in connection with the sale of the Property. *Id.* at Ex. H. On October

4, 2021, the date Attorney Krengel had been advised settlement on the Property would take

place, Attorney Krengel was notified that SMS had received a bank wire of $101,824.52 "in

satisfaction of [its] lien against Robert Busby." Krengel Aff. ¶¶ 5, 6, Ex. B. On October 14,

2021, the Mortgage having been satisfied, the PSA Deed was filed. *Id.* at ¶ 8.

On November 29, 2021, the State Court denied the Debtor's Motion to Vacate, stating

that its "holding was without prejudice to Robin Busby's ability to petition the United States

Bankruptcy Court…to reopen her matter so she may seek recourse in that Court." ("November

2021 Order"). SMS Obj. Ex. I at 4. The next day, on November 30, 2021, a deed dated

---

[1] After being notified by Ms. Sniras of the payoff demand made by Attorney Krengel on behalf of SMS, Attorney
Stewart emailed Ms. Sniras on September 16, 2021, advising:

> …[n]ote Busby filed for bankruptcy on January 28, 2020. Note Judge Rothstein entered an Order
> on 2/7/2020: AFTER the bankruptcy case was opened. Bankruptcy law prohibits any party from
> seeking an order that effects bankruptcy estate property. Krengel violated this Bankruptcy rule.
> Meanwhile, Krengel also misrepresented the ownership of Robert Busby to Judge Rothstein.
> Robert deeded his share to Robin on 9/22/16 and provided that deed to the Court to incorporate
> into a final Divorce Decree signed in October 2016. Krengel admitted to me his client has no
> secured lien based on the Bankruptcy filing and Discharge Order. This results in the condition of
> title prior to January 28, 2020 – the mortgage was satisfied and released at that time. Krengel and
> Judge Rothstein's order are invalid. I have asked Krengel to Vacate the Order [sic] or I will
> petition to vacate the order and seek contempt sanctions against his client.

Mot. for Contempt Ex. I.

September 30, 2021, transferring the Property from Debtor to Laura Amato and Patrick Wayman

was filed, reflecting consideration for the transfer in the amount of $940,000. Krengel Aff. ¶ 9,

Ex. C.

On December 27, 2021, Debtor filed a notice of appeal of the November 2021 Order.

SMS Obj. Ex. I at 4. On January 3, 2022, Debtor filed a motion to reopen her bankruptcy case

with this Court ("Motion to Reopen"). ECF 105. On February 1, 2022, an order was entered

granting the Debtor's Motion to Reopen without opposition. ECF 108.

On February 22, 2022, the State Court filed an opinion explaining the basis for the

November 2021 Order ("State Court Opinion"). *See* Obj. SMS Ex. I. With respect to the

ownership of the Property, the State Court Opinion commented:

> Ms. Busby claims that she is the sole owner of the Subject Property by virtue of
> the deed Mr. Busby executed contemporaneously with the PSA. However, as
> referenced above, this deed was held in escrow by Ms. Busby's divorce attorney
> and was not recorded due to Ms. Busby's failure to complete the mandated
> refinancing of the Subject Property as set forth in the PSA. Ms. Busby also
> wrongly asserts that she and Mr. Busby hold title to the Subject Property as
> tenants by the entirety, a representation also made in her bankruptcy filing. Mr.
> and Ms. Busby, however, have held title to the Subject Property as tenants in
> common since the issuance of their divorce decree pursuant to 23 Pa.C.S.A.
> §3507, which provides that whenever married persons holding property as tenants
> by entireties are divorced, they shall thereafter hold the property as tenants in
> common of equal one-half shares in value. Ms. Busby acknowledged she held title
> to the Subject Property with Mr. Busby as a tenant in common when she entered
> into the 2017 Settlement Agreement which discharged her obligations under the
> Mortgage.

*Id.* at 5-6.

With respect to Debtor's contention that the Debtor was an indispensable party to the original

Petition to Strike, the State Court Opinion concluded:

> [t]he relief SMS sought in its Petition to Strike was to correct a patent mistake and
> to affirm the Mortgage against Mr. Busby's interest as a tenant in common. The
> 2017 Settlement Agreement released Robin Busby from her obligations under the
> Mortgage and the Petition to Strike was an action involving only SMS and Robert

9

> G. Busby. SMS sought no form of redress against Ms. Busby. Mr. and Ms. Busby were not tenants by the entirety at the time SMS filed its Petition to Strike and were instead tenants in common who personally held the Subject Property in equal separate shares rather than as a single legal entity. Thus, Ms. Busby's rights are in no way intertwined with SMS's Petition to Strike and the court's February 7, 2020 Order granting the petition did not impair her rights in the Subject Property as a tenant in common. Accordingly, due to the lack of any prejudice to Ms. Busby's rights stemming from the filing of the Petition to Strike, Ms. Busby was not an indispensable party who needed to be joined as a defendant.

*Id.* at 7-8.

Finally, with respect to the impact of Debtor's bankruptcy filing, the State Court Opinion

determined that:

> [t]he court also has no grounds to modify its February 7, 2020 Order due to Ms. Busby's bankruptcy filing.
> …
> Upon SMS's realization that the recorded satisfaction of mortgage paperwork inadvertently released Mr. Busby in addition to Ms. Busby, it took steps to strike this recording and file an amended satisfaction of mortgage paperwork which released only Robin Busby. Contrary to Ms. Busby's assertions, this was not an act to collect a debt which would be prohibited under the Bankruptcy Code's automatic stay provisions. It was instead a correction to an already existing lien. To the extent Mr. Busby's interest as a tenant in common in the Subject Property could be part of the bankruptcy estate and the Petition to Strike may have somehow affected the estate in violation of the automatic bankruptcy stay, the court inserted protective language in its order denying Ms. Busby's Motion to Vacate which would allow her to seek relief in the Bankruptcy Court.

*Id.* at 8-9.

The Debtor filed her "Motion for Contempt for Violation of the Automatic Stay and

Discharge Injunction" ("Contempt Motion") on March 15, 2022 against SMS and Attorney

Krengel (collectively, "Respondents"), appearing to contend that the State Court's hearing on the

Petition to Strike and entry of the February 2020 Order violated the automatic stay under 11

U.S.C. § 362(a), and that Attorney Krengel's post-petition actions to obtain proceeds from the

sale of the Property on behalf of SMS amounted to a violation of the discharge injunction

pursuant to 11 U.S.C. § 524(a). ECF 111, Mot. for Contempt ¶¶ 6, 11, 15, 16, 17, 19, 20, 21, 25,

10

29. SMS and Attorney Krengel filed responses in opposition on April 19, 2022. ECF 116, 117. A

hearing was initially held on the Contempt Motion on April 26, 2022, where the Court requested

additional briefing. ECF 118. Supplemental briefing was completed on June 30, 2022, and a

hearing on the Contempt Motion was held on July 19, 2022. ECF 121, 122, 123, 124. The matter

is now ripe for disposition.

## III.    DISCUSSION

### A.  Applicable Legal Principles – Violations of the Automatic Stay

The automatic stay is one of the fundamental debtor protections supplied by the

Bankruptcy Code to stop pending debt collection activity and litigation against the debtor and the

estate. *Krystal Cadillac Oldsmobile GMC Truck, Inc. v. GMC (In re Krystal Cadillac

Oldsmobile GMC Truck, Inc.)*, 142 F.3d 631, 637 (3d Cir.1998); *Billings v. Portnoff Law Assocs.

(In re Billings)*, 544 B.R. 529, 533 (Bankr. E.D. Pa. 2016). Pursuant to 11 U.S.C. § 362(a):

> [e]xcept as provided in subsection (b) of this section, a petition filed under section
> 301, 302, or 303 of this title…operates as a stay, applicable to all entities, of –
> (1) the commencement or continuation, including the issuance or employment of
> process, of a judicial, administrative, or other action or proceeding against the
> debtor that was or could have been commenced before the commencement of the
> case under this title, or to recover a claim against the debtor that arose before the
> commencement of the case under this title;
> (2) the enforcement, against the debtor or against property of the estate, of a
> judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the
> estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate;
> (5) any act to create, perfect, or enforce against property of the debtor any lien to
> the extent that such lien secures a claim that arose before the commencement of the
> case under this title;
> (6) any act to collect, assess, or recover a claim against the debtor that arose
> before the commencement of the case under this title;
> (7) the setoff of any debt owing to the debtor that arose before the commencement
> of the case under this title against any claim against the debtor; and
> (8) the commencement or continuation of a proceeding before the United States
> Tax Court concerning a tax liability of a debtor that is a corporation for a taxable
> period the bankruptcy court may determine or concerning the tax liability of a

debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

A willful violation of the automatic stay gives rise to a claim for damages. 11 U.S.C. § 362(k). Under § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." In order to establish a claim pursuant to 11 U.S.C. § 362(k)(1), the moving party must show by a preponderance of the evidence that (1) the creditor violated the automatic stay; (2) the violation of the stay was willful; and (3) the willful violation caused the debtor some injury. *Dean v. Carr* (*In re Dean*), Bankr. No. 1:11-bk-05680MDF, Adv. Nos. 1:11-ap481MDF, 1:11-ap-00505MDF, 2012 WL 4634291, at *5 (Bankr. M.D. Pa. Oct. 1, 2012); *In re Miller*, 447 B.R. 425, 433, n. 10 (Bankr. E.D. Pa. 2011).

A creditor "willfully" violates the stay when he or she does so with knowledge of the bankruptcy. *In re Miller*, 447 B.R. at 433. Knowledge of the existence of the bankruptcy case is "treated as knowledge of the automatic stay." *E.g.*, *Theokary v. Abbatiello, (In re Theokary)*, 444 B.R. 306, 322 (Bankr. E.D. Pa. 2011) (collecting cases). "Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional..." *Vu v. Lin* (*In re Vu*), 591 B.R. 596, 603 (Bankr. E.D. Pa. 2018) (quoting *Lansdale Family Rests., Inc. v. Weis Food Serv.* (*In re Lansdale Family Rests., Inc.*), 977 F.2d 826, 829 (3d Cir. 1992)). A good faith mistake of law or dispute as to the creditor's right to take the action does not negate the willfulness of the violation. *Dean v. Carr* (*In re Dean*), 490 B.R. 662, 673 (Bankr. M.D. Pa. 2013) ("'[A] creditor's good faith belief that it had a right to [a debtor's] property is irrelevant' to the question of whether the creditor has willfully violated the stay."); *In re Nixon*, 419 B.R. 281, 288 (Bankr. E.D. Pa. 2009).

12

**B.  Debtor Is Not Entitled to Recover Damages Under 11 U.S.C. § 362(k).**

Debtor appears to suggest that SMS and/or Attorney Krengel willfully violated the

automatic stay under § 362(a) by continuing with State Court proceedings related to the Petition

to Strike the Mortgage Satisfaction and obtaining entry of the February 2020 Order. Ultimately,

the Debtor is not entitled to recover under 11 U.S.C. § 362(k) based on those post-petition

proceedings because Debtor has made no showing that either SMS or Attorney Krengel was

aware of the Debtor's bankruptcy filing at the time the hearing on the Petition to Strike was held

or the February 2020 Order was entered. In fact, Debtor's counsel concedes as much. *See e.g.,*

ECF 120, Hrg. Tr. 28:15-19. This is fatal to the Debtor's attempt to recover damages under 11

U.S.C. § 362(k), as without knowledge of the bankruptcy, SMS/Attorney Krengel's actions in

connection with the State Court proceedings simply cannot be considered willful.

Furthermore, Debtor has not shown that the State Court's hearing on the Petition to Strike

or entry of the February 2020 Order violated the automatic stay. The Petition to Strike was

brought solely against Mr. Busby, not the Debtor. Therefore, proceedings related to the Petition

to Strike did not violate § 362(a)(1), as they did not implicate the Debtor. These State Court

proceedings also did not involve enforcement of any judgment entered pre-petition, and thus did

not implicate § 362(a)(2).

Moreover, these State Court proceedings did not implicate either property of the estate or

Debtor. Under 23 Pa.C.S.A. § 3507(a), "[w]henever married persons holding property as tenants

by entireties are divorced, they shall, except as otherwise provided by an order made under this

chapter, thereafter hold the property as tenants in common of equal one-half shares in value…"

Although pursuant to the PSA, Mr. Busby signed the PSA Deed which would have transferred

the Property in fee simple to the Debtor, the PSA Deed was specifically to be held in escrow

pending the Debtor refinancing the Mortgage into her own name or otherwise removing Mr.

Busby's name from the Mortgage, which she had sixty days from the execution of the PSA to do.

As the State Court Opinion noted, and as all parties recognize, this contingency did not come to

pass by the time the hearing on the Petition to Strike was held or February 2020 Order entered –

in fact, Debtor did the exact opposite following the entry of the Divorce Decree. She executed

the 2017 Settlement Agreement in order to remove *her name* from the Mortgage, leaving Mr.

Busby solely liable for that obligation in direct contravention of the PSA. This is significant.

Under Pennsylvania law, "[d]elivery of a deed is necessary to render it legally operative." *In re

Estate of Plance,* 644 Pa. 232, 250 (2017). "Whether there has been delivery [of a deed] depends

on the intention of the grantor as shown by his words and action and by circumstances

surrounding the transaction." *Williams v. Estate of Matto*, 15 Pa. D. & C. 5th 215, 220 (Ct.

Comm. Pleas, Lackawanna Cty. 2010). *See also In re Estate of Plance,* 644 Pa. at 250 ("Delivery

of a deed turns upon the grantor's intent to convey title to the grantee. Such delivery may be

found where the grantor's words or actions reflect that essential intent."). Importantly,

"conditional delivery or a delivery in escrow of a deed is not a delivery to the grantee." *DiMaio

v. Musso,* 762 A.2d 363, 365 (Pa. Super. Ct. 2000); *Atiyeh v. Bear,* 456 Pa. Super. 548, 560

(1997); *Stephenson v. Butts,* 187 Pa. Super. 55, 58 (1958); *Hoch v. Hill,* 117 Pa. Super. 74, 79

(1935) ("If the understanding on which the deed was delivered to Rhode amounted, in effect, to a

conditional delivery, or a delivery in escrow, it would not be a delivery to the grantees.");

*Williams,* 15 Pa. D. & C. 5th at 220. *See also In re Cragin's Estate,* 274 Pa. 1, 5 (1922)

("Generally speaking, a delivery is complete when a deed is acknowledged before a proper

officer as being signed, sealed and delivered without an act, expression, or writing indicating an

intention to qualify this formal act.").

14

The PSA could not have been more explicit that the PSA Deed was to be held in escrow and not recorded unless and until Debtor refinanced or removed Mr. Busby's name from the Mortgage within sixty days of executing the PSA. A conditional delivery of a deed to be held in escrow does not constitute delivery necessary to render a deed legally operative. In fact, the PSA unambiguously reflects Mr. Busby's intention that title was only to be transferred upon satisfaction of the aforementioned condition, delineating certain consequences for if "title to the Marital Premises is properly transferred to reflect Wife's ownership in Fee Simple" and for if she did not refinance the Mortgage. Because she did not refinance or remove Mr. Busby from the Mortgage in accordance with the PSA by the time the hearing on the Petition to Strike was conducted and February 2020 Order entered, the PSA Deed remained in escrow and had not been delivered, rendering it legally inoperative for purposes of those proceedings. Based on all the foregoing, the Court agrees with the State Court Opinion's determination that up to the date of the Property's recent post-petition sale, the Debtor held the Property as tenants in common with Mr. Busby. This conclusion also happens to be consistent with Debtor's own acknowledgment in the 2017 Settlement Agreement that she owned the Property after the divorce as a tenant in common with Mr. Busby.

Tenancy in common represents an estate in which "there is unity of possession but separate and distinct titles." *In re Estate of Quick,* 588 Pa. 485, 490 (2006); *In re Sale of Property of Dalessio,* 657 A.2d 1386, 1387 n.1 (Pa. Commw. Ct. 1995). A tenant in common may, without the consent of his co-tenant, sell, convey, or dispose of his undivided interest in the property. *In re Sale of Property of Dalessio,* 657 A.2d at 1387 n.1. As described in the State Court Opinion, "the relief SMS sought in its Petition to Strike was to correct a patent mistake and to affirm the Mortgage against Mr. Busby's interest as a tenant in common." SMS Obj. Ex. I

15

at 7. This Court agrees with the State Court Opinion's conclusion that "Ms. Busby's rights are in

no way intertwined with SMS's Petition to Strike and the court's February 7, 2020 Order

granting the petition did not impair her rights in the Subject Property as a tenant in common." *Id.*

The proceedings related to the Petition to Strike were simply pursued to correct the erroneous

Mortgage Satisfaction as to Robert Busby's interest in the Property to reflect what was intended

by the 2017 Settlement Agreement. Debtor's 2017 Settlement Agreement releasing *her* liability

on the Mortgage remained fully valid and intact and was in no way affected by the State Court

proceedings.

Therefore, the State Court proceedings related to the Petition to Strike did not violate any

remaining provision of the automatic stay. In particular, § 362(a)(3) is not implicated because the

State Court proceedings only involved preserving the Mortgage against Mr. Busby's interest in

the Property, which is not property of the estate; § 362(a)(4) is not implicated because any lien

from the SMS Mortgage only applied to Mr. Busby's interest in the Property, which is not

property of the estate; § 362(a)(5) is not implicated because any lien from the SMS Mortgage

only applied to Mr. Busby's interest in the Property, which is not property of the Debtor; and

§362(a)(6) is not implicated because the State Court proceedings did not involve any acts to

collect, assess, or recover a claim against the Debtor but rather, at most, against Mr. Busby's

interest in the Property. The proceedings to strike the Mortgage Satisfaction in no way

invalidated or impacted the 2017 Settlement Agreement which released Debtor from her

obligation under the Mortgage, thereby leaving her and her property interests unaffected by those

proceedings. Because the Debtor has not established that SMS or Attorney Krengel violated the

automatic stay by continuing with the State Court proceedings against Mr. Busby, Debtor has not

established that she is entitled to recover under § 362(k).

16

The Debtor also seems to potentially suggest that Attorney Krengel's August 2, 2021 email to Debtor's realtor demanding payoff of the Mortgage from the proceeds of the upcoming sale of the Property violated the automatic stay still in effect at that time. The Debtor may not recover damages under § 362(k) for this contact because there is no evidence that Attorney Krengel and/or SMS was aware that the Debtor had filed for bankruptcy at that point, and thus the conduct does not qualify as "willful" under the statute. Furthermore, the conduct did not violate the automatic stay in any event, because, as Attorney Krengel's August 2 email was clear, the demand for payoff was simply an attempt to recover the Mortgage against *Mr. Busby's* non-estate portion of the Property, and was not an attempt to recover a claim against the Debtor, enforce a prepetition judgment against property of the estate, obtain possession of property of the estate, enforce a lien against property of the estate, or enforce a lien against property of the debtor. *See* 11 U.S.C. § 362(a)(1)-(6).

### C. Applicable Legal Principles – Violation of the Discharge Injunction

A discharge "operates as an injunction against the commencement or continuation of an action ... or an act, to collect, recover or offset any such debt as a personal liability of the debtor ...." 11 U.S.C. § 524(a)(2). The purpose of this statutory injunction "is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts." *Thomas v. City of Philadelphia (In re Thomas)*, 626 B.R. 804, 814 (Bankr. E.D. Pa. 2021) (citing *In re Cook*, 527 B.R. 607, 612 (Bankr. E.D. Pa. 2015)).

The discharge provision of the Bankruptcy Code does not include an implied, private right of action. *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452, 456 (3d Cir. 2005). The discharge injunction is enforceable, however, through a contempt motion pursuant to 11 U.S.C. § 105. See *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (recognizing

17

the "old soil" of combining the § 524(a)(2) injunctive power and the § 105(a) enforcement power in formulating the authorization to enforce the discharge injunction through the use of civil contempt). Sanctions for civil contempt of a court order not involving the discharge injunction may be granted when three elements have been established: (1) a valid order has been entered; (2) the person to be charged with contempt has actual knowledge of the order; and (3) the person has disobeyed the order. *In re Thomas*, 626 B.R. at 814. Similarly, in the bankruptcy context, to hold a party in contempt for violating the discharge injunction, a debtor must establish by clear and convincing evidence that: (1) a discharge order has been entered (discharging the applicable debt); (2) the creditor had notice of the discharge order; (3) collection efforts continued regardless; and (4) "there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart,* 139 S. Ct. at 1801; *Thomas*, 626 B.R. at 814-15; *Minech v. Clearview Federal Credit Union (In re Minech),* 632 B.R. 274, 280-81 (Bankr. W.D. Pa. 2021). Stated another way, as explained by the recent Supreme Court decision, *Taggart v. Lorenzen*, "[a] court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart,* 139 S. Ct. at 1804.

The standard articulated in *Taggart* is an objective one; a party's subjective belief that it complied with an order will not insulate it from civil contempt if that belief was objectively unreasonable. *Id.* at 1802, 1804. Nevertheless, a party's subjective intentions may play a role in the court's analysis. *Id.* at 1802. A party's record of continuing and persistent violations will justify forcing the offending party to bear the burden of demonstrating any uncertainty in the judicial order. *Id.* On the other hand, a party's good faith may be a mitigating factor in the court's determination of appropriate sanctions. *Id.*

18

### D. Debtor Has Not Established That the Respondents Acted in Contempt of the Discharge Injunction.

Debtor appears to suggest that Attorney Krengel and/or SMS violated the discharge injunction through efforts to demand payoff of the Mortgage from the proceeds of the sale of the Property. However, this conduct did not run afoul of the discharge injunction. Although the Discharge Order had been entered; SMS through Attorney Krengel was provided notice of the Discharge Order from Attorney Stewart on August 23, 2021; and efforts to collect proceeds from the Property's sale continued, the Respondents had at the very least an objectively reasonable basis for concluding that demanding payment of the Mortgage from Mr. Busby's portion of the Property did not violate the Discharge Order. In fact, the demand for payoff of the Mortgage from Mr. Busby's portion of the Property *did not* constitute an act to collect, recover, or offset any debt as a personal liability of the Debtor. Importantly, the discharge injunction does not enjoin a mortgage holder from exercising its right in the mortgaged property *of another person*. The PSA's provision permitting Debtor to keep any net proceeds from the sale of Mr. Busby's portion of the Property did not preclude SMS or any other creditors holding liens against Mr. Busby's portion of the Property from recovering against his portion. It appears that the Property sold for $940,000 and that SMS recovered $101,824.52 of those proceeds. No evidence reflecting that any other liens were paid off from the sale proceeds has been presented. Accordingly, it appears that SMS's recovery stayed well within the value of Mr. Busby's half of the Property. The bankruptcy did not impact SMS's ability to collect on an *in rem* claim against Mr. Busby's property. Accordingly, based on the foregoing, SMS and Attorney Krengel had an objectively reasonable basis for concluding that their payoff demand was not in contempt of the discharge injunction.

19

## IV.    CONCLUSION

Based on the foregoing, the Court concludes that Debtor is not entitled to recover any

damages against the Respondents based upon the conduct complained of in connection with the

Contempt Motion. The Contempt Motion is DENIED.

Date: August 1, 2022

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge